1   **WO**

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                        FOR THE DISTRICT OF ARIZONA

8

9   Daena A. Reininger,                      No. CV 12-01314-PHX-JAT

10                         Plaintiff,         **ORDER**

11  v.

12  Carolyn W. Colvin, Acting Commissioner
    of the Social Security Administration,

13                         Defendant.

14

15          Pending before the Court is Plaintiff's appeal from the Administrative Law

16  Judge's denial of Plaintiff's application for disability insurance benefits under Title II and

17  Title XVI of the Social Security Act.

18  **I.      PROCEDURAL BACKGROUND**

19          On August 13, 2008, Plaintiff Daena April Reininger filed Title II and XVI

20  applications for a period of disability and disability insurance benefits and for

21  supplemental security income with the Commissioner of the Social Security

22  Administration (the "Commissioner"), alleging that her disability began on January 1,

23  2002.   (Record Transcript ("TR") 19).   Plaintiff's claim was denied initially on

24  September 4, 2009, and upon reconsideration it was denied again on March 12, 2010.

25  (*Id.*).

26          Following the denials, on March 18, 2010, Plaintiff filed a request for a hearing

27  with an Administrative Law Judge ("ALJ").  (*Id.*).  Plaintiff appeared and testified before

28  the ALJ on January 25, 2011.  (*Id.*).  On March 25, 2011, the ALJ issued a decision

finding that Plaintiff suffered from severe fibromyalgia, hypothyroidism, bipolar disorder, histrionic personality traits and opiate (methadone) dependence in a controlled setting and was unable to perform past relevant work.  (TR 22; TR 31).  However, the ALJ found that Plaintiff was not disabled under the Social Security Act because she retained the Residual Functional Capacity to perform jobs that exist in significant numbers in the national economy.  (TR 31-32).

Following the ALJ's denial of Plaintiff's claim, Plaintiff requested review of the ALJ's decision with the Appeals Council, Office of Hearings and Appeals, Social Security Administration.  (TR 12).  On May 8, 2012, the Appeals Council denied Plaintiff's request for review.  (TR 1).  The Appeals Council adopted the ALJ's decision as the final decision of the Commissioner.  (*Id*.).

On June 19, 2012, Plaintiff filed her Complaint with this Court for judicial review of the Commissioner's decision denying her claim, which is the subject of this appeal. (Doc. 1).  Plaintiff has filed an opening brief (the "Brief") seeking judicial review of the ALJ's denial of her claim.  (Doc. 10).  In the Brief, Plaintiff argues that the Court should set aside the ALJ's decision and award benefits because the ALJ's decision contains legal error as it lacks substantial justification to support the ALJ's conclusions.  (*Id*. at 27).

## II.   LEGAL STANDARD

As an initial matter, in making her argument that the Court should set aside the ALJ's decision, Plaintiff conspicuously states that the standard of review is one where the ALJ's "[d]ecision is to be based on the record as a whole and *the Social Security Act is to be broadly construed and liberally applied in favor of disability*."  (Doc. 10 at 13) (emphasis added).  Plaintiff directly cites "*Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)", for this bold proposition.  (*Id*.).  Plaintiff's proposition, however, is a complete misstatement of the law.  Page 750 of *Magallanes* makes no reference or implication whatsoever about broadly construing or liberally applying the Social Security Act.  In case the wrong pincite was used, the Court notes nothing in the opinion as a whole asserts this standard either.  In case Plaintiff cited the wrong case, the Court notes

that it has found no case in the Ninth Circuit asserting this proposition.  The standard of review in the Ninth Circuit is in fact stated in *Magallanes* on page 750.  However, as the Ninth Circuit Court of Appeals has repeatedly explained, the Commissioner's decision to deny benefits will be overturned "only if it is not supported by substantial evidence or it is based on legal error."  *Magallanes*, 881 F.2d at 750 (quoting *Brawner v. Sec'y of Health & Human Svcs.*, 839 F.2d 432, 433 (9th Cir. 1987), quoting in turn *Green v. Heckler*, 803 F.2d 528, 529 (9th Cir. 1986)).  Substantial evidence is more than a mere scintilla, but less than a preponderance.  *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998).

"The inquiry here is whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached by the ALJ."  *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984) (citation omitted).  In determining whether there is substantial evidence to support a decision, this Court considers the record as a whole, weighing both the evidence that supports the ALJ's conclusions and the evidence that detracts from the ALJ's conclusions.  *Reddick*, 157 F.3d at 720.  "Where evidence is susceptible of more than one rational interpretation, it is the ALJ's conclusion which must be upheld; and in reaching his findings, the ALJ is entitled to draw inferences logically flowing from the evidence."  *Gallant*, 753 F.2d at 1453 (citations omitted).  If there is sufficient evidence to support the Commissioner's determination, the Court cannot substitute its own determination. *See Young v. Sullivan*, 911 F.2d 180, 184 (9th Cir. 1990).  The ALJ is responsible for resolving conflicts in medical testimony, determining credibility, and resolving ambiguities.  *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  Thus, if on the whole record before this Court, substantial evidence supports the Commissioner's decision, this Court must affirm it.  *See Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989); *see also* 42 U.S.C. § 405(g).  "[T]he key question is not whether there is substantial evidence that could support a finding of disability, but whether there is substantial evidence to support the Commissioner's actual finding that claimant is not disabled."  *Jamerson v. Chater*, 112

F.3d 1064, 1067 (9th Cir. 1997).

### A.   Definition of Disability

To qualify for disability benefits under the Social Security Act, a claimant must show among other things, that she is "under a disability." 42 U.S.C. § 423(a)(1)(E). "The mere existence of an impairment is insufficient proof of a disability." *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993) (citing *Sample v. Schweiker*, 694 F.2d 639, 642–43 (9th Cir. 1982)).   Disability has "a severity and durational requirement for recognition under the [Social Security] Act that accords with the remedial purpose of the Act." *Flaten v. Sec'y of Health & Human Svcs.*, 44 F.3d 1453, 1459 (9th Cir. 1995).

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  A person is "under a disability only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id*. at § 423(d)(2)(A).

"A claimant bears the burden of proving that an impairment is disabling." *Matthews*, 10 F.3d at 680 (quoting *Miller v. Heckler*, 770 F.2d 845, 849 (9th Cir. 1985)). Thus, "[t]he applicant must show that [s]he is precluded from engaging in not only h[er] 'previous work,' but also from performing 'any other kind of substantial gainful work' due to such impairment." *Id*. (quoting 42 U.S.C. § 423(d)(2)(A)).

### B.   Five-Step Evaluation Process

The Social Security regulations set forth a five-step sequential process for evaluating disability claims.  20 C.F.R. § 404.1520; *see also Reddick*, 157 F.3d at 721 (describing the sequential process).   A finding of "not disabled" at any step in the sequential process will end the ALJ's inquiry and the claim will be denied.  20 C.F.R. §

404.1520(a)(4).  The claimant bears the burden of proof at the first four steps, but the burden shifts to the ALJ at the final step.  *Reddick*, 157 F.3d at 721.

The five steps are as follows:

First, the ALJ determines whether the claimant is "doing substantial gainful activity."  20 C.F.R. § 404.1520(a)(4)(i).  If so, the claimant is not disabled.

Second, if the claimant is not gainfully employed, the ALJ determines whether the claimant has a "severe medically determinable physical or mental impairment."   20 C.F.R. § 404.1520(a)(4)(ii).  A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities."  *Id*. at § 404.1520(c).  Basic work activities means the "abilities and aptitudes to do most jobs."  *Id*. at § 404.1521(b).  Further, the impairment must either be expected "to result in death" or "to last for a continuous period of twelve months."  *Id*. at § 404.1509 (incorporated by reference in 20 C.F.R. § 404.1520(a)(4)(ii)).  The "step-two inquiry is a de minimis screening device to dispose of groundless claims."  *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).

Third, having found a severe impairment, the ALJ next determines whether the impairment "meets or medically equals the criteria of any of the listings in the Listing of Impairments in appendix 1, subpart P of 20 CFR part 404 (appendix 1)."  SSR 12-2p, 2012 WL 3104869 at *6 (July 25, 2012).  If so, the claimant is found disabled without considering the claimant's age, education, and work experience.  20 C.F.R.§ 404.1520(d).

Fibromyalgia ("FM"), however, cannot meet a listing in appendix 1 because FM is not a listed impairment.  Therefore, at step 3 the ALJ determines whether FM medically equals a listing (for example, listing 14.09D in the listing for inflammatory arthritis), or whether it medically equals a listing in combination with at least one other medically determinable impairment.  SSR 12-2p at *6.

When a claimant's impairments do not meet or equal a listed impairment under appendix 1, the ALJ will assess a claimant's Residual Functional Capacity ("RFC").  *Id*.  The ALJ bases the RFC assessment on all relevant evidence in the case record.  *Id*.  The

ALJ considers the effects of all of the claimant's medically determinable impairments, including impairments that are not severe. *Id.* For a person with FM, the ALJ will consider a longitudinal record whenever possible because the symptoms of FM can wax and wane so that a person may have bad days and good days. *Id.*

At steps 4 and 5, the ALJ uses the RFC assessment to determine whether the claimant is capable of doing any past relevant work (step 4) or any other work that exists in significant numbers in the national economy (step 5). *Id.*; 20 C.F.R. § 404.1520(a). If the person is able to do any past relevant work, the ALJ will find that he or she is not disabled. *Id.* If the person is not able to do any past relevant work or does not have such work experience, the ALJ determines whether he or she can do any other work. *Id.* The usual vocational considerations apply (age, education, and work experience). *Id.*; 20 C.F.R. § 404.1520(g)(1). If the claimant can make an adjustment to other work, then she is not disabled. If the claimant cannot perform other work, she will be found disabled. As previously noted, the ALJ has the burden of proving the claimant can perform other substantial gainful work that exists in the national economy. *Reddick*, 157 F.3d at 721.

With regard to steps 1-5 in this case, the ALJ found that Plaintiff: (1) had satisfied the first step and had not engaged in substantial gainful activity since January 1, 2002 (TR 21); and (2) had fulfilled the second step and shown that she suffered from the following severe impairments: FM, hypothyroidism, bipolar disorder, histrionic personality traits and opiate (methadone) dependence in a controlled setting. (TR 22). With regard to the third step (3), the ALJ found that Plaintiff did not have an impairment or combination of impairments specifically listed in the regulations. (*Id.*). Therefore, the ALJ determined Plaintiff's RFC and found she had the capacity to perform light work as defined by the regulations with some restrictions and was limited to work involving simple repetitive tasks (TR 24). As a result of this analysis, the ALJ found at the fourth step (4) that Plaintiff is "unable to perform any past relevant work" as a behavioral health technician or waitress. (TR 31). At the last step (5), however, relying on the testimony of a vocational expert, the ALJ found that given Plaintiff's age, education, work

experience, and RFC that Plaintiff is capable of making a successful adjustment to other work and performing jobs that exist in significant numbers in the national economy. (TR 31-32). Thus, the ALJ found that Plaintiff was not disabled as defined in the Social Security Act. (TR 32).

## III.   ANALYSIS

Plaintiff makes four arguments for why the Court should set aside the ALJ's decision. Specifically, Plaintiff argues that the ALJ committed procedural error by (1) rejecting the medical assessments of examining sources without substantial evidence (Doc. 10 at 13-17), (2) by failing to evaluate each of Plaintiff's impairments (*id*. at 17-21), (3) by misusing the vocational expert in determining that Plaintiff could perform other jobs that exist in the national economy (*id*. at 21-24), and (4) by rejecting Plaintiff's symptom testimony without giving clear and convincing reasons (*id*. at 24-26). The Court will address each of Plaintiff's arguments in turn.

### A.   Whether the ALJ Properly Rejected the Medical Assessments of Treating Sources

First, Plaintiff argues that (1) the ALJ failed to properly weigh the opinions of Plaintiff's examining physicians and (2) failed to properly evaluate a report prepared by a psychiatric nurse practitioner. (*Id*. at 13-17). In reaching his decision, the ALJ explicitly considered medical opinion evidence consisting of the medical assessment performed by the state agency physician, Robert Quinones, D.O. (TR 400-407), separate assessments performed by Plaintiff's treating physicians, Kevin Cleary, D.O. (TR 497-502), and Dr. Gramstad, D.O. (TR 511-513), the assessment of state agency psychologist, George Delong, Ph.D. (TR 408-413), and the mental impairment report prepared by psychiatric nurse practitioner Elaine New Moon (TR 503-509). Based on these assessments, Plaintiff's daily living, and the medical evidence of the record as a whole, the ALJ concluded that Plaintiff was only limited to performing light work as defined by the regulations. (TR 24, 31).

### 1.   The ALJ Properly Rejected the Opinions of Treating Physicians

Plaintiff's initial argument is that the ALJ did not offer substantial evidence, nor did substantial evidence exist, supporting the ALJ's decision to give more credence to the assessment of the State agency examiner and reject the assessments of Plaintiff's treating physicians. (Doc. 10 at 14-15). The basis of Plaintiff's argument is that "there were no treating or examining physicians that rendered an opinion that the ALJ adopted or gave weight. The only medical opinion specifically adopted by the ALJ was the State agency reviewing physician's opinion. Accordingly, substantial evidence does not exist sufficient to reject all treating and examining source opinions." (*Id*.).

The ALJ is not required to adopt the opinion of any treating physicians. The ALJ is merely required to make a decision supported by substantial evidence. As stated above, *see supra* Section II, if substantial evidence supports the Commissioner's decision, this Court must affirm it. *See Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989); *see also* 42 U.S.C. § 405(g). The Court will set aside the ALJ's decision "only if it is not supported by substantial evidence or it is based on legal error." *Magallanes*, 881 F.2d at 750. Substantial evidence is more than a mere scintilla, but less than a preponderance. *Reddick*, 157 F.3d at 720.

The Court finds that the ALJ did base his decision on substantial evidence. The ALJ explained that he gave significant weight to the State agency physician because "it is consistent with the medical record." (TR 29). The "opinion of a non-examining medical expert . . . may constitute substantial evidence when it is consistent with other independent evidence in the record." *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (citing *Magallanes*, 881 F.2d at 752). "Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability." *Tonapetyan*, 242 F.3d at 1148 (citing *Magallanes*, 881 F.2d at 751). "When there is a conflict between the opinions of a treating physician and an examining physician, as here, the ALJ may disregard the opinion of the treating physician only if he sets forth 'specific and legitimate reasons supported by substantial evidence in the record

- 8 -

for doing so.'" *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)). "[T]he contrary opinion of a non-examining medical expert does not alone constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion, [however,] it may constitute substantial evidence when it is consistent with other independent evidence in the record." *Id.* at 1149 (citing *Magallanes*, 881 F.2d at 752).

In this case, the State agency examiner's opinion constituted substantial evidence because, as the ALJ explained, it was consistent with the record as a whole. *See* (TR 29). The ALJ's explanation of the record as a whole throughout his analysis constituted the requisite specific and legitimate reasons for reaching his conclusion. First, the ALJ explained that the medical evidence showed "scant clinical evidence of fibromyalgia," and then the ALJ supported this proposition by establishing all the points in the record where Plaintiff's alleged FM was addressed. (TR 25-26). Next, the ALJ addressed the limited records in the medical evidence supporting Plaintiff's alleged bipolar condition and pointed out the conflicting medical evidence that did exist in the record. (TR 26-27). Then the ALJ explained how Plaintiff was "generally noncompliant with her medical treatment, as indicated by her treating doctors," and how Plaintiff's daily activities undermined her claims of disability. (TR 27-28). Finally, the ALJ noted Plaintiff's ability to work and travel, and Plaintiff's history of inconsistent statements. (TR 28-29).

Social Security Ruling, SSR 12-2P, 2012 WL 3104869 (July 25, 2012), states,

> [a]s with any claim for disability benefits, before we find that a person with an MDI of FM is disabled, we must ensure there is sufficient objective evidence to support a finding that the person's impairment(s) so limits the person's functional abilities that it precludes him or her from performing any substantial gainful activity.

SSR 12-2p at *2.

> If objective medical evidence does not substantiate the person's statements about the intensity, persistence, and functionally limiting effects of symptoms, [the Commissioner] consider[s] all of the evidence in the case record, including the person's daily activities, medications or

> other treatments the person uses, or has used, to alleviate symptoms; the nature and frequency of the person's attempts to obtain medical treatment for symptoms; and statements by other people about the person's symptoms.

*Id.* at *5. This is exactly the type of objective evidence that the ALJ relied on and articulated in making the determination that the State agency examiner's opinion should be accorded more weight and ultimately in finding that Plaintiff was not disabled.

In addition to the objective evidence throughout the record that was consistent with the State agency physician's assessment, the ALJ explained that his decision was influenced by the four specific and legitimate reasons he gave for assigning little weight to Dr. Cleary's opinion, the four reasons he gave for rejecting Dr. Gramstad's opinion, and the fact that Dr. Delong's opinion was inconsistent with the medical evidence of record. (TR 29-30).

Thus, the Court finds the ALJ articulated specific and legitimate reasons for disregarding the assessments of Plaintiff's treating physicians and he relied on substantial evidence (i.e. the State agency physician's assessment consistent with the medical record) in reaching his conclusion. At the very least, the evidence cited by the ALJ was susceptible to more than one rational interpretation. Therefore, the ALJ's conclusion must be upheld. *See Gallant*, 753 F.2d at 1453 ("Where evidence is susceptible of more than one rational interpretation, it is the ALJ's conclusion which must be upheld; and in reaching his findings, the ALJ is entitled to draw inferences logically flowing from the evidence.") (citations omitted).

### 2. The ALJ Properly Rejected Nurse Practitioner Moon's Opinion

Plaintiff also argues that the ALJ failed to properly evaluate the mental impairment report prepared by psychiatric nurse practitioner Elaine New Moon. (Doc. 10 at 15-17). Plaintiff contends that the ALJ "failed to provide any reason for rejecting Ms. Moon's opinions, [therefore] they should be accepted as true." (*Id.* at 17). Plaintiff goes on to make the argument that Ms. Moon is a third party lay witness and the ALJ was required to give germane reasons for rejecting her opinions. (*Id.*).

The ALJ addressed Ms. Moon's opinions and did in fact explain germane reasons why he gave little weight to her opinion.  The ALJ stated that "[t]his opinion is given little weight . . . . [because] [t]he nurse practitioner saw the claimant only on [ ] one occasion [ ] and there are no additional medical records provided for comparison."  (TR 31).  Further, the ALJ explained that Ms. Moon "is not an acceptable medical source" under "20 C.F.R. §§ 404.1513, 416.913."  (*Id*.).  These reasons are valid and consistent with the regulations and case law.  *See* 20 C.F.R. § 404.1527(c)(2)(i) (identifying the length of treatment relationship and the frequency of examination as factors to be considered when weighing medical opinions); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007) (if a treating physician's opinion is not given controlling weight, the ALJ considers the length of treatment, frequency of examination, and the nature and extent of the treatment relationship to determine how much weight to give the opinion.).  Plaintiff may not agree with the reasons the ALJ gave for rejecting Ms. Moon's opinions, but the argument that the ALJ "failed to provide any reason for rejecting Ms. Moon's opinions" is inaccurate and unpersuasive.  Accordingly, the ALJ did not err in how he rejected Ms. Moon's opinion.

### B.    Whether the ALJ Sufficiently Evaluated Plaintiff's  Impairments

Next, Plaintiff argues that the ALJ failed to evaluate Plaintiff's major depressive disorder, generalized anxiety disorder, borderline personality disorder, childhood sexual, emotional, and physical abuse, and chronic fatigue syndrome ("CFS") at step 2 of the sequential process where the ALJ determines the claimant's severe medically determinable physical or mental impairments.  (Doc. 10 at 18).  Further, Plaintiff argues that the ALJ failed to address these impairments while determining her RFC.  (*Id*.).

As with Plaintiff's misstatement of the legal standard governing review of the ALJ's decision, *see supra* Section II, Plaintiff misstates the law governing the consideration of multiple impairments.   Plaintiff asserts, by directly citing 20 C.F.R. § 404.1523, that "[o]nce a severe impairment exists, as here, all medically determinable impairments must be considered."  (Doc. 10 at 18).  However, the regulations clearly

state "[i]f we do find a medically severe combination of impairments, *the combined impact of the impairments* will be considered throughout the disability determination process." 20 C.F.R. § 404.1523 (emphasis added). Plaintiff's argument is based on the assertion that each individual impairment must be considered separately and addressed, yet, this is not what the law requires.

While Plaintiff begins her argument with the allegation that the ALJ failed to address her major depressive disorder, generalized anxiety disorder, borderline personality disorder, and childhood sexual, emotional, and physical abuse, Plaintiff does not address a single one of these impairments in her argument. Instead, Plaintiff would have the Court find that the ALJ was required to address Plaintiff's "morbid obesity in combination with her foot problem." (Doc. 10 at 19). Further, Plaintiff argues that the ALJ failed to comply with policy and evaluate Plaintiff's alleged CFS. (*Id*.). Finally, Plaintiff argues that the ALJ also failed to comply with policy in evaluating the severity of Plaintiff's FM. (*Id*.).

The ALJ explicitly stated that Plaintiff's obesity was considered during his determination of her RFC. *See* (TR 22). Further, Plaintiff did not establish that her foot problem prevented substantial gainful activity for twelve months or longer in accordance with 20 C.F.R. § 404.1509. Plaintiff's plantar fasciitis and heel spur were transient problems.

Plaintiff's alleged CLS was a part of the analysis. The ALJ made it clear that the "entire record" was considered. (TR 21). The ALJ did address that Plaintiff was "diagnosed" with CLS by Dr. Ratcliffe. (TR 25). However, Dr. Ratcliffe's report was made regarding a single consultation and indicated that he merely had an "impression" of Plaintiff that included CFS. (TR 345). Dr. Cleary opined that Plaintiff exhibited CFS (TR 497), but this was not a definitive diagnosis and the ALJ gave little weight to Dr. Cleary's opinion anyway for the host of reasons the ALJ articulated (TR 29).

Finally, the ALJ thoroughly addressed Plaintiff's FM in his evaluation and determination of Plaintiff's RFC. The ALJ found Plaintiff suffered from severe FM. (TR

22).   He then determined the limitations caused by Plaintiff's FM in considering the credibility of her subjective complaints.  *See* (TR 25-26).  As explained above, *see supra* Section III.A, SSR 12-2P states,

> [a]s with any claim for disability benefits, before we find that a person with an MDI of FM is disabled, we must ensure there is sufficient objective evidence to support a finding that the person's impairment(s) so limits the person's functional abilities that it precludes him or her from performing any substantial gainful activity.

SSR 12-2p at *2.

> If objective medical evidence does not substantiate the person's statements about the intensity, persistence, and functionally limiting effects of symptoms, [the Commissioner] consider[s] all of the evidence in the case record, including the person's daily activities, medications or other treatments the person uses, or has used, to alleviate symptoms; the nature and frequency of the person's attempts to obtain medical treatment for symptoms; and statements by other people about the person's symptoms.

*Id*. at *5.  No objective evidence existed to support Plaintiff's allegations of FM, thus, the ALJ was left to consider all of the evidence in the record and this is exactly what he did throughout the course of his analysis.

Accordingly, the ALJ did not commit procedural error and properly considered all of Plaintiff's impairments in determining her RFC.  Specifically, the ALJ sufficiently addressed the three limitations Plaintiff argues that the ALJ failed to evaluate.

**C.     Whether the ALJ Properly Utilized the Vocational Expert's Testimony**

Plaintiff contends that the ALJ erred by accepting the vocational expert's ("VE") testimony.  (Doc. 10 at 21-24).  Specifically, Plaintiff argues that (1) the ALJ offered a hypothetical to the VE that failed to include all of Plaintiff's alleged limitations and (2) the ALJ erred in not resolving an alleged conflict between the VE's testimony and the Dictionary of Occupational Titles ("DOT").

Plaintiff asserts that the ALJ erred by presenting a hypothetical to the VE that

failed to include Plaintiff's non-exertional limitations of pain and fatigue, her physical limitation caused by her ankle impairment, and her moderate limitation in concentration, persistence, and pace.  The hypothetical that the ALJ posed to the VE contained all of the limitations that the ALJ found credible and supported by substantial evidence in the record.  The hypothetical was based on Plaintiff's determined RFC.  As explained above, *see supra* Section III.B, the ALJ properly considered all of Plaintiff's impairments while determining her RFC.  The ALJ's reliance on testimony the VE gave in response to the hypothetical therefore was proper. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217-18 (9th Cir. 2005) (finding ALJ could rely on testimony of VE in social security disability proceeding, even though hypothetical presented to VE did not include all of claimant's alleged limitations, where hypothetical contained all limitations that ALJ found credible and supported by substantial evidence.)

Next Plaintiff argues that the VE's testimony considered non-exertional limitations such as difficulty functioning due to mental impairments and difficulty concentrating, yet Plaintiff contends that the DOT does not address non-exertional limitations, therefore a conflict existed between the VE's testimony and the DOT.  Under SSR 00-4p, 2000 WL 1898704, at *1 (Dec. 4, 2000), the ALJ must identify and have the VE reasonably explain any conflicts between a VE's testimony and the DOT.  In this case, the ALJ stated that the VE's testimony was consistent with the DOT.  (TR 32).

Plaintiff's argument that an unaddressed conflict exists is unpersuasive because the DOT does address mental and non-exertional limitations in the context of assigning different skill levels to different occupations.  *See* SSR 00-4p, at *3 (explaining that the DOT uses the skill level definitions in 20 C.F.R. §§ 404.1568, 416.968).  Accordingly, the Court disagrees with Plaintiff's claim that the VE's testimony was inconsistent with the DOT.

### D.    Whether the ALJ Properly Rejected Plaintiff's Symptom Testimony

Finally, Plaintiff argues that the ALJ erred in finding her testimony was not credible.  (Doc. 10 at 24-26).  Plaintiff argues that the ALJ must give clear and

convincing reasons for rejecting her testimony and finding it not credible.   (*Id*. at 24).
Plaintiff contends that "[t]he ALJ asserted reasons for rejecting [her] credibility, but none
[were] clear and convincing supported by substantial evidence as required."   (*Id*. at 25).
To reject the subjective testimony of a claimant, however, the ALJ is not required to give
clear and convincing reasons.   As Plaintiff notes this is the most demanding standard
required in Social Security cases.   (*Id*. at 24) (quoting *Moore v. Comm'r of Soc. Sec.
Admin*., 278 F.3d 920, 924 (9th Cir. 2002)).   Rather, the ALJ must make specific findings
based on the record.   The District Court of California has addressed this issue in a well-
reasoned opinion and this Court has adopted that Court's reasoning before in concluding
that, to the extent there is actually any principled distinction between the two standards,
the ALJ must make specific findings supported by the record to explain his credibility
evaluation.[1]

---

[1] The District Court of California set forth its reasoning as follows:

> In *Bunnell*, the court addressed confusion regarding the
> standard for evaluating the credibility of subjective
> complaints and endorsed the standard set forth in *Cotton v.
> Bowen*, 799 F.2d 1403 (9th Cir.1986), *Varney v. Secretary of
> Health and Human Services*, 846 F.2d 581, 583–584 (9th
> Cir.1988) and *Gamer v. Secretary of Health and Human
> Services*, 815 F.2d 1275, 1279 (9th Cir.1987).   *Bunnell*, 949
> F.2d at 345.   The so-called "*Cotton* standard" requires the
> claimant to produce objective medical evidence of an
> underlying impairment that is reasonably likely to be the
> cause of the alleged pain.   Once that evidence is produced, the
> adjudicator may not reject a claimant's subjective complaints
> based solely on a lack of objective medical evidence fully
> corroborating the alleged severity of the pain.   *Bunnell*, 949
> F.2d at 343, 345 (citing *Cotton*, 799 F.2d at 1407).   Rather,
> the adjudicator must "specifically make findings which
> support this conclusion.   These findings, properly supported
> by the record, must be sufficiently specific to allow a
> reviewing court to conclude the adjudicator rejected the
> testimony on permissible grounds and did not arbitrarily
> discredit a claimant's testimony regarding pain."   *Bunnell*,

949 F.2d at 345–46 (internal citation and quotation omitted).

Some subsequent decisions have stated that, unless there is affirmative evidence that a claimant is malingering, the ALJ must articulate "clear and convincing" reasons for rejecting subjective complaints. *See, e.g., Morgan v. Commissioner of the Social Security Administration*, 169 F.3d 595, 599 (9th Cir.1999); *Regennitter v. Commissioner of the Social Security Administration*, 166 F.3d 1294, 1296 (9th Cir.1999); *Reddick*, 157 F.3d at 722; *Light*, 119 F.3d at 792; *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir.1995); *Smolen*, 80 F.3d at 1284; *Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir.1995); *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir.1993). Other decisions state that the ALJ must make specific findings based on the record, but do not use the "clear and convincing" formula. *See, e.g., Meanel v. Apfel*, 172 F.3d 1111, 1113–14 (9th Cir.1999); *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir.1998); *Chavez v. Department of Health and Human Services*, 103 F.3d 849, 853 (9th Cir.1996); *Byrnes v. Shalala*, 60 F.3d 639, 641–42 (9th Cir.1995); *Moncada*, 60 F.3d at 524; *Orteza v. Shalala*, 50 F.3d 748, 749–50 (9th Cir.1995) (per curiam); *Flaten v. Secretary of Health and Human Services*, 44 F.3d 1453, 1464 (9th Cir.1995).

The "clear and convincing" language appears to have been derived from *Swenson v. Sullivan*, 876 F.2d 683 (9th Cir.1989), which states that "[t]he Secretary's reasons for rejecting excess symptom testimony must be clear and convincing if medical evidence establishes an objective basis for some degree of the symptom and no evidence affirmatively suggests that the claimant was malingering." *Swenson*, 876 F.2d at 687 (citing *Gallant v. Heckler*, 753 F.2d 1450, 1455 (9th Cir.1984)). In *Gallant*, however, the court did not hold, or even affirmatively state, that an ALJ is required to provide "clear and convincing" reasons for rejecting excess pain testimony whenever there is no evidence of malingering. Instead, the court merely observed that no witness had testified that the claimant was malingering, that "[n]o clear and convincing reasons were provided by the ALJ" for his rejection of the claimant's testimony, and that the evidence relied on by the ALJ for his credibility

Turning to the ALJ's decision in this case, the Court finds the ALJ did in fact make specific findings supported by the record in explaining why he disregarded Plaintiff's subjective complaints.  First, the ALJ found Plaintiff's subjective complaints about FM were not supported by the medical evidence.  (TR 24).  While an ALJ may not reject a claimant's subjective complaints based solely on lack of objective medical evidence to fully corroborate the alleged severity of pain, *see Rollins*, 261 F.3d at 856-57; *Fair*, 885 F.2d at 602, the lack of objective medical evidence supporting the claimant's claims may support the ALJ's finding that the claimant is not credible.  *See Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2003).  While Plaintiff claimed she had a history of FM, the first documentation of FM was by Dr. Ratcliffe in 2009 where Plaintiff claimed she had been diagnosed with FM several years earlier.  (TR 25).  The ALJ noted Plaintiff has never proffered documentation to support this claim.  (*Id*.).  Dr. Ratcliffe diagnosed Plaintiff with FM, however, Plaintiff never returned for

---

> evaluation was "insubstantial."  *Gallant*, 753 F .2d at 1455, 1456.
>
> *Bunnell* did not cite either *Gallant* or *Swenson*, and neither *Bunnell* nor the cases it did cite with approval (that is, *Cotton*, *Varney*, and *Gamer*) use the "clear and convincing" formula. It thus appears that the "clear and convincing" standard is an unwarranted elaboration of the substantial evidence standard of review, and that it was not part of the *Cotton* test adopted in *Bunnell*, where the en banc court attempted to clarify the law.  Any difference between the standards may be more apparent than real.  There does not appear to be any principled distinction between the two standards as they have been applied.  To the extent that there is or may be a conflict, however, *Bunnell* must control since it was an en banc decision.  Accordingly, this Court will adhere to *Bunnell's* requirement that the ALJ make "specific findings" supported by the record to explain his credibility evaluation, rather than imposing the arguably more exacting "clear and convincing" requirement suggested by *Morgan* and its predecessors.

*Ballard v. Apfel*, No. CV 99-2195-AJW, 2000 WL 1899797, at *2 (C.D. Cal. Dec. 19, 2000).

treatment from Dr. Ratcliffe and aside from Dr. Ratcliffe's report the ALJ notes that there is "scant clinical evidence of FM." (*Id*.).  Plaintiff never sought out or received treatment from a specialist for FM and was not diagnosed with FM by a rheumatologist. (*Id*.).  All of her limited treatment for FM was done by general practitioners. (*Id*.).

Second, the ALJ found Plaintiff was consistently noncompliant with treatment for her alleged conditions.  Plaintiff's allegations of a bipolar condition were not supported by the record because there were few records establishing consistent treatment for a mental condition.  (TR 26).  Plaintiff's treating doctors for her medical conditions indicated that she was generally noncompliant with their treatment as well.  (TR 27).  "[U]nexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment" is a relevant factor in assessing credibility of testimony. *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir.1991); *see also Meanal v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (ALJ may consider Social Security disability claimant's failure to follow treatment advice as a factor in assessing Social Security disability claimant's credibility).

Plaintiff failed to appear for several counseling sessions and was noted to exhibit poor attendance history throughout treatment by the NOVA clinic.  (TR 26).  Ultimately, Plaintiff was discharged from the clinic for noncompliance.  (*Id*.).  She next sought treatment two years later from Family Service Agency, where her chief complaint was that she needed to continue psychotropic medications.  (*Id*.).  She was given medications and told to return in four weeks for medication review.  (TR 27).  Plaintiff failed to show for the next two scheduled appointments and only showed after her medication refills were denied at the pharmacy.  (*Id*.).  Plaintiff's record at the agency also notes that she was not compliant with treatment.  (*Id*.).  Further, Plaintiff's Global Assessments of Functioning showed she was progressively improving with time and the ALJ noted that medications were effective in controlling Plaintiff's mental symptoms.  (*Id*.).  "Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for [disability] benefits."  *Warre v. Comm'r of Soc.*

*Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (citing *Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004)); *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987); *Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir. 1983) (affirming a denial of benefits and noting that the claimant's impairments were responsive to medication)).

Third, the ALJ found Plaintiff's daily activities undermined her subjective complaints (TR 28).   *See Matthews*, 10 F.3d at 679-80 (Ninth Circuit Court of Appeals upheld ALJ's rejection of claimant's subjective complaints where ALJ found claimant's performance of daily activities like housecleaning, light gardening, and shopping undermined claimant's assertion of disabling pain.).   The ALJ noted that Plaintiff assists in caring for her granddaughter and nephew, which included walking three blocks to her granddaughter's school three times a week.   (TR 28).   Further, Plaintiff told her psychiatric nurse practitioner that she takes care of her disabled friend and has an active life.   (*Id.*).   Plaintiff testified that she does the dishes, laundry, and sometime goes to the store as well as at least one household chore daily.   (*Id.*).   The ALJ explained that Plaintiff's subjective allegations of disabling pain were undermined by her ability to spend a substantial part of the day engaged in activities involving the performance of various physical and mental functions.   (*Id.*).

Fourth, the record also contained evidence of exaggeration.   In weighing credibility, the ALJ may consider evidence that a claimant exaggerated her symptoms when evaluating the claimant's subjective complaints of pain.   *See Hall v. Astrue*, No. CV 12-3494 JC, 2012 WL 3779080, at *4 (C.D. Cal. Aug. 31, 2012); *Jones v. Callahan*, 122 F.2d 1148, 1152 (8th Cir. 1997).   As the ALJ expressly noted in his decision, the record "suggests that [Plaintiff] is able to lift and carry more than alleged and is generally more active than alleged."   (TR 28).   Further, the record also contained evidence that Plaintiff works and travels.   (*Id.*).

Finally, the record reflected a series of inconsistent statements as explained by the ALJ.   (TR 28-29).

The Court finds the ALJ's credibility finding was a "reasonable interpretation" of

the evidence and was supported by substantial evidence in the record, accordingly, "it is not [the Court's] role to second-guess it." *Rollins*, 261 F.3d at 857 (citing *Fair*, 885 F.2d at 604).  Therefore, the ALJ did not err in rejecting Plaintiff's subjective complaints.

**IV.    CONCLUSION**

Accordingly, the ALJ did not err in finding that Plaintiff was not disabled within the meaning the Social Security Act.

Based on the foregoing,

**IT IS ORDERED** that the decision of the Administrative Law Judge is **AFFIRMED**.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment accordingly.  The judgment will serve as the mandate of this Court.

Dated this 9th day of July, 2013.

James A. Teilborg
Senior United States District Judge